IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SCOTT DIDONATO            :      CIVIL ACTION
                          :
        v.                :
                          :
RICHARD C. ZILMER, et al. :      NO. 10-4205


MEMORANDUM

McLaughlin, J.                          October 21, 2013


        The petitioner, Scott DiDonato,[1] is a former United
States Marine who has filed a petition for relief under the
mandamus statutes and the Administrative Procedure Act ("APA"),
5 U.S.C. § 701 et seq., against the former Commandant and the
former Deputy Commandant of the Marine Corps, the Department of
the Navy, and the United States.  DiDonato requests mandamus
relief that the Court compel the Marine Corps to reenlist him.
DiDonato also alleges that the Department of the Navy's Board
for Correction of Naval Records ("BCNR" or "the Board") violated
the APA by refusing to upgrade his reenlistment code from RE-4
(not recommended for reenlistment) to RE-1 (eligible for
reenlistment), and he seeks an order from this Court that the
reenlistment code be changed.

---

[1] The petitioner was formerly known as Scott Toelk but
changed his name to Scott DiDonato in 2007.  Pet'r Opp'n, ECF
No. 9, at 40.

1

The respondents filed a motion for summary judgment, which was followed by an opposition, reply briefing, supplemental submissions, and an oral argument held on November 4, 2011. At oral argument, the petitioner limited his suit to a claim that the 2010 decision by the BCNR to keep the petitioner's reenlistment code as RE-4 rather than change it to RE-1 was arbitrary and capricious under the APA. Hr'g Tr. at 43-44, ECF No. 17.

On May 2, 2012, the Court subsequently ordered that the motion for summary judgment was denied without prejudice. On May 23, 2012, the Court ordered that the petitioner's application to amend his reenlistment code was remanded to the BCNR in order for the BCNR to address both the application and the issues raised in the Court's May 2, 2012 Order.

Following the BCNR's reevaluation of DiDonato's case in light of the Court's May 2, 2012 Order, the respondents filed a supplemental brief in support of the government's motion for summary judgment. In that brief, the respondents refer to their prior summary judgment submissions as addressing the principal legal and factual questions before the Court. Therefore, the Court considers that supplemental brief as a renewed motion for summary judgment, and the Court will consider the parties' previous filings on the motion for summary judgment, along with supplemental briefing following the remand. DiDonato responded

to both the issues raised in the May 2, 2012 Order and what he characterizes as BCNR's arbitrary and capricious review of his application on remand.

For the following reasons, the Court will now grant the respondents' motion for summary judgment.

## I. Relevant Summary Judgment Record

This Court's review of an administrative decision is limited to the administrative record. Baugh v. Mabus, No. 10-440, 2011 WL 1103851, at *4 (E.D. Pa. Mar. 25, 2011) (citing Marshall v. Lansing, 839 F.2d 933, 943–44 (3d Cir. 1988)), aff'd sub nom. Baugh v. Sec'y of the Navy, 504 F. App'x 127 (3d Cir. 2012).

The Court will therefore consider the certified administrative record submitted by the respondents in two parts on November 15, 2011 (Docket No. 16), and December 14, 2011 (Docket No. 20). The Court will also consider the documents the BCNR reviewed on remand, which included many of the summary judgment filings before this Court. The respondents submitted the following documents to the Court after the remand: (1) a February 19, 2013 letter from the Executive Director of the BCNR, W. Dean Pfeiffer ("Pfeiffer Letter"), Resp't Supplemental Br., Ex. 3, and (2) a May 24, 2012 affidavit from Frances S. Poleto ("Poleto Aff."), Resp't Supplemental Br., Ex. 11.

Based on the petitioner's representations at oral argument, the Court limits its consideration of the facts to those relevant to the issue of whether the BCNR's 2010 decision not to upgrade DiDonato's reenlistment code was arbitrary and capricious under the APA.

A. Service and Discharge

Scott DiDonato served in the United States Marine Corps from October 1999 until January 9, 2001. DiDonato alleges various mistreatments by superior officers during that time, which caused him to take two unauthorized absences ("UAs") from service. During both absences, DiDonato complained to his congressman about his treatment and ultimately returned voluntarily to service.

Facing charges for the latter UA, DiDonato requested an "other than honorable" ("OTH") discharge in lieu of trial by special court-martial (also called a Separation in Lieu of Trial by Court Martial or "SiLT")). Cert. R. at 000047-48. Upon his discharge, which took effect on January 9, 2001, DiDonato was given a reentry code of RE-4 (not recommended for reenlistment). Cert. R. at 000170; see also Cert. R. at 000075 (amended character of service).

### B. 2003-04 Attempt to Upgrade Discharge Status and Reenlist

In 2003, DiDonato sought to reenlist. He contacted officers in the Marine Corps who allegedly gave him incorrect advice and engaged in fraudulent activity by placing false documents in his military file. Following this incorrect advice, DiDonato petitioned the BCNR to upgrade his reenlistment code. In June 2004, the BCNR denied his request. Cert. R. at 000028-30, 000083-84.

### C. 2008 Upgrade of Discharge Status

In November 2008, DiDonato submitted an application to the Naval Discharge Review Board ("NDRB") to upgrade his "other than honorable" discharge. His request was successful, and on December 22, 2009, the NDRB upgraded his discharge to "general (under honorable conditions)." Cert. R. at 000068. The NDRB's rationale was that DiDonato should have been given an opportunity to retrain for a different position in the Marines (known as a Military Occupational Specialty or "MOS") before he was discharged, and that his discharge characterization was too harsh. The NDRB, however, did not change the "narrative reason" for DiDonato's discharge, which remained "In Lieu of Trial by Court Martial." Cert. R. at 000069-74; see also Pet'r Opp'n, ECF No. 9, at 22-28 (corrected NDRB decision).

D. 2010 BCNR Reenlistment Code Change Denial

In February 2010, DiDonato again applied to the BCNR for an upgrade to his reenlistment code based upon his upgraded discharge status by the NDRB and his allegations of past misconduct by the Navy.

According to the certified administrative record from the BCNR, DiDonato's 2010 application to change his reenlistment code was reviewed by Frances S. Poleto, the head of the Performance Evaluation Review Branch of the Manpower Management Division ("MMER"). Poleto sent a memorandum to the Executive Director of the BCNR along with ten enclosures and the recommendation that DiDonato's reenlistment code remain RE-4. Cert. R. at 000037-38. On March 31, 2010, DiDonato's counsel responded to Poleto's memorandum, objecting to many of Poleto's characterizations and conclusions. Pet'r Resp. 11/30/11, Ex. 6, ECF No. 19-1, at 79-81. The March 31 letter was apparently reviewed by Poleto but not included in the BCNR certified record.[2] Cert. R. at 000031.

On April 1, 2010, W. Dean Pfeiffer, the Executive Director of the BCNR, denied DiDonato's request. Because DiDonato had applied to change his reenlistment code in 2004,

_____

[2] Poleto sent a revised memorandum to the BCNR on April 15, 2010, referring to DiDonato's counsel's letter. A handwritten note in the BCNR file dated April 22, 2010, states that the case is not under review and therefore no action on the memorandum is required. Cert. R. at 000031.

Pfeiffer treated his 2010 application as a request for "reconsideration" of the earlier decision. Cert. R. at 000026. The letter from Pfeiffer states:

> Your current application has been carefully examined. Although, at least some of the evidence you have submitted is new, it is not material. In other words, even if this information was presented to the Board, the decision would inevitably be the same. Accordingly, reconsideration is not appropriate at this time.

Id.

### E. BCNR Decision Following Remand

On remand from this Court, the BCNR denied DiDonato's request for correction of his record, concluding that in April 2010, Pfeiffer had properly denied his request for further consideration of his application to be assigned a new reentry code of RE-1. Pfeiffer Letter at 8-9.

### 1. Pfeiffer Letter

The Pfeiffer letter states that the Board convened on two separate occasions, on October 11, 2012, and on January 10, 2013, to conduct the review ordered by this Court. The Board reviewed the certified administrative record and other materials

filed before this Court, as well as applicable statutes, regulations, and policies.[3]  Pfeiffer Letter at 1-2.

The Board states that neither DiDonato nor his counsel responded to the Board's requests for information, identified what documents were allegedly missing from the administrative record, or submitted a concise statement of DiDonato's contentions of error or injustice.  The Board concluded that it "was unable to determine with certainty what documents Mr. Stackhouse submitted in 2010 in support of Mr. DiDonato's request for further consideration of his application, or the basis of [his] belief that material error or injustice occurred in his case . . . ."  Pfeiffer Letter at 2.  The Board was therefore "unable to determine if the Executive Director . . . [had] considered all of the evidence and other

---

[3] In total, the Board reviewed the following materials: this Court's May 2, 2012 Order (Docket No. 21); the administrative record (Docket Nos. 16, 20); the May 24, 2012 affidavit of Frances S. Poleto, Resp't Supplemental Br., Ex. 11; a letter to the Court from R.M. Bernstein, dated May 14, 2012; DiDonato's letter to the Court, dated May 18, 2012; DiDonato's supplemental response to the motion for summary judgment, dated November 30, 2011 (Docket No. 19, 19-1, 19-2); the respondents' reply brief in support of their motion for summary judgment, dated May 16, 2011 (Docket No. 11); DiDonato's opposition to the motion for summary judgment, dated May 9, 2011 (Docket No. 9); the motion for summary judgment, dated March 28, 2011 (Docket No. 6); a letter from the U.S. Attorney's Office, dated June 27, 2012; DiDonato's letter, dated November 13, 2012; and the applicable statutes, regulations, and policies.  Pfeiffer Letter at 1-2.  The certified administrative record considered on remand also included DiDonato's official military personnel file.  Id. at 1 n.1.

matters that were submitted in support of the request for
further consideration of Mr. DiDonato's application."  Id.

The respondents' counsel notified the Board that the
March 12, 2010 letter to the Commandant of the Marine Corps is
the document that DiDonato's counsel had submitted in support of
the request for reconsideration.  Id.; see Pet'r Resp. 11/30/11,
Ex. 6, ECF No. 19-1, at 68-69.  The Board stated that the letter
"contains misleading information" and that "it is of no
probative value."  Pfeiffer Letter at 2.  The Board therefore
concluded that DiDonato had failed to present new material
evidence or other matter that warranted further consideration of
the December 30, 2003 application for correction of his naval
record.  Id. at 2-3.  The Board also concluded that the evidence
was insufficient to demonstrate the existence of probable
material error or injustice in connection with the assignment of
a reentry code of RE-4.  Id.

## 2. Poleto Affidavit

To address the Court's concern about the process that
resulted in Poleto's 2010 recommendation that DiDonato's reentry
code not be changed, the respondents also submit an affidavit
from Frances S. Poleto.  She states:

> The Marine Corps policy is that an RE-code is only
> changed if it was erroneously assigned.  A
> reenlistment code is intended to reflect a Marine's

> eligibility for reenlistment <u>at the time of discharge</u>.
> If the petitioner's record as it appeared at the time
> of discharge supports the assignment of the contested
> code, we have no authority to change it, and it is
> forwarded to the BCNR for their adjudication.

Poleto Aff. at 1. Poleto concludes that it is beyond the

purview of her office to research and adjudicate DiDonato's

claims of injustice leading up to his discharge. His records

substantiated the assignment of an RE-4 code because "[h]e was

administratively separated in lieu of trial, and his

disciplinary record of two NJP's [nonjudicial punishments under

10 U.S.C. § 815] and the separation in lieu of trial supports an

RE-4."[4] <u>Id.</u> at 1.


F. <u>The Parties' Supplemental Summary Judgment Briefing</u>

The respondents argue that DiDonato has not identified

a single factual or legal error by the BCNR; he alleges only

that Pfeiffer lacked the complete record on which to base a

principled decision when he denied the application on April 1,

2010. Resp't Supplemental Br. at 8, ECF No. 24. DiDonato has

also failed to identify what documents were missing from the

record or supplement the record for consideration by the BCNR on

remand. <u>Id.</u> at 9. Lastly, the respondents note that DiDonato

---

[4] The fact that DiDonato had two UAs, but only one NJP, is
addressed below at Section IV.C.1.

does not dispute the original assignment of the RE-4 reentry code in 2001. Id. at 10.

In response, DiDonato argues that the respondents have failed to address this Court's original concerns, because they have failed to provide any further explanation of the administrative record documents that were considered by the BCNR in making their initial decision. Pet'r Resp. to Resp't Supplemental Br. at 3, ECF No. 26. DiDonato also argues that the respondents have failed to submit any evidence from which the Court could determine whether the BCNR reviewed the relevant factors and data. Specifically, he asserts that neither Poleto nor Pfeiffer identify what documents were considered by each of them in coming to their own initial decisions, or what documents were forwarded by Poleto to Pfeiffer in 2010. Id. at 5. Lastly, DiDonato argues that the BCNR fails to state how or why the March 12, 2010 letter was "misleading." Id. at 6.

DiDonato raises several additional issues with regard to Poleto's affidavit: (1) it is not actually Marine Corps policy to change an RE-code only if it erroneously assigned; (2) DiDonato's record lacks the required documented counseling between him and his Commanding Officer upon assignment of an RE-4 code; (3) DiDonato only has one NJP of the lowest level; and (4) it is not true in all cases that a Marine with two NJPs and a SiLT gets an RE-4 code assigned. Id. at 6-10.

DiDonato also contests the following portions of the Pfeiffer letter: (1) Pfeiffer does not explain the process behind the 2010 application decision; (2) the BCNR does not describe what is misleading about the March 12, 2010 letter accompanying DiDonato's DD-149 application; (3) the BCNR makes unfounded conclusions about DiDonato's service in the National Guard; and (4) there is no requirement that a Marine receive an RE-4 when receiving an OTH discharge as a result of a SiLT. Id. at 10-14.

Finally, DiDonato contends that the BCNR committed error or injustice in several ways. Primarily, he reiterates his arguments from earlier in this litigation that many errors were committed during the 2004 BCNR review and leading up to the BCNR's 2010 reconsideration of his application, and that "[t]he BCNR is incorrect in stating that the only 'new' evidence submitted was the decision of NDRB to upgrade Plaintiff's discharge to general under honorable conditions." Id. at 20.

II. Statutory Provisions and Regulations

The military's procedure for amending records is created and governed by 10 U.S.C. § 1552, which says that "[t]he Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an

injustice." The Department of the Navy remedies errors or injustices through the BCNR, as described in the Code of Federal Regulations ("CFR"), 32 C.F.R. § 723.1 et seq.

The purpose of the BCNR is "to consider applications . . . for the purpose of determining the existence of error or injustice in the naval records of current and former members of the Navy and Marine Corps . . . ." Id. § 723.2(b). The Board "may deny an application . . . if it determines that the evidence of record fails to demonstrate the existence of probable material error or injustice." Id. § 723.3(e)(2). The Board presumes that officials have properly discharged their duties unless the applicant provides "substantial evidence to the contrary." Id. The Board is not required to hold a hearing before denying an application. Id. § 723.3(e)(1).

The BCNR's procedures are expanded upon in Secretary of the Navy ("SECNAV") Instruction 5240.193. Pet'r Resp. 11/30/11, Ex. 3, ECF No. 19-1, at 29-57. The Assistant Secretary of the Navy (Manpower and Reserve Affairs) is "assigned the responsibility for the overall supervision of BCNR and is delegated authority to take final action on BCNR cases forwarded for review." Id., ECF No. 19-1, at 29-30 (SECNAV Instr. 5420.193 ¶ 3.b). An attachment to the SECNAV Instruction informs applicants that "[r]equests involving Marine Corps reenlistment codes should be sent to Headquarters Marine Corps

(Code MMER)." Id., ECF No. 19-1, at 53 (SECNAV Instr. 5420.193, Encl. 3 at 3(a)(3)).

The BCNR's procedure related to "Reconsideration" states:

> [F]urther consideration will be granted only upon presentation by the applicant of new and material evidence or other matter not previously considered by the Board. New evidence is defined as evidence not previously considered by the Board and not reasonably available to the applicant at the time of the previous application. Evidence is material if it is likely to have a substantial effect on the outcome.

32 C.F.R. § 723.9. Reconsideration requests "will be initially screened by the Executive Director of the Board to determine whether new and material evidence or other matter . . . has been submitted by the applicant." Id.

On remand, the BCNR explained how reentry codes are assigned by the Navy and Marines. Pfeiffer Letter at 3. Department of Defense Instruction 1336.1 requires a reentry code on some forms issued to service members being discharged or released from active duty. The Department of the Navy implemented those instructions through the Bureau of Naval Personnel ("BUPERS") instructions, 1900.8 series, and through Marine Corps orders of the P1900.16 series, also known as the Marine Corps Separation and Retirement Manual ("MARCORPSEPMAN").

BUPERS instruction 1900.8B lists reentry code RE-4 as the only code available to a voluntary discharge in lieu of

trial by court martial. Resp't Supplemental Br., Ex. 4 (BUPERS

Instr. 1900.8B). The MARCORPSEPMAN instructions are less

specific. Appendix J to the MARCORPSEPMAN lists the

reenlistment codes and when they are assigned. For example,

code RE-4 is assigned when the Marine is "[n]ot recommended for

reenlistment." Resp't Supplemental Br., Ex. 7 (MCO P1900.16E,

Appendix J). Paragraph 6419 of the MARCORPSEPMAN governs

separation in lieu of trial by court-martial. Resp't

Supplemental Br., Ex. 8 (MCO P1900.16E ¶ 6419).

"Characterization of service" after a SiLT is generally listed

as "under other than honorable conditions." Id. (MCO P1900.16E

¶ 6419(2)). The "under other than honorable conditions"

characterization may be issued when "the reason for separation

is based upon behavior, or omission, that constitutes a

significant departure from the conduct expected of a Marine."

Resp't Supplemental Br., Ex. 10 (MCO P1900.16E ¶ 1004(c)(1)).


III. Standard of Review

        The courts are not "given the task of running" the

military forces and are therefore deferential to military

decisions, especially regarding personnel. Orloff v.

Willoughby, 345 U.S. 83, 93-94 (1953). Despite this deference,

courts will review allegations that the military violated the

Constitution, governing statutes such as the APA, or its own

regulations. See Neal v. Sec'y of the Navy, 639 F.2d 1029, 1037 (3d Cir. 1981). Under the APA, a court can set aside agency action "found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

The district court can employ summary judgment to "decide as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." Salisbury v. United States, No. 07-4881, 2008 WL 5423487, at *2 n.5 (E.D. Pa. Dec. 30, 2008), aff'd, 368 F. App'x 310 (3d Cir. 2010).

The court reviews the agency decision to determine "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." C.K. v. N.J. Dep't of Health & Human Servs., 92 F.3d 171, 182 (3d Cir. 1996). The court must determine whether the agency reviewed the relevant data and articulated a satisfactory explanation for the action taken. Motor Veh. Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co., 463 U.S. 29, 43 (1983).

The court's review focuses on the agency's decisionmaking process, and not on the decision itself. NVE, Inc. v. Dep't of Health & Human Servs., 436 F.3d 182, 190 (3d Cir. 2006). For purposes of review under the APA, there is a strong presumption that personnel involved in the decisionmaking

process have faithfully discharged their duties.  Such deference
applies not only to the military but to any decisionmaker whose
decision is to be reviewed under a standard that assumes
discretion has been exercised soundly, in absence of proof to
the contrary.  Neal, 639 F.2d 1029, 1037-38 (3d Cir. 1981); see
also Lechliter v. Rumsfeld, 181 F. App'x 266, 269 (3d Cir. 2006)
(citing Kreis v. Sec'y of the Air Force, 866 F.2d 1508, 1514
(D.C. Cir. 1989)).  The Court heeds the Third Circuit's
instruction in DiDonato's related Federal Tort Claims Act appeal
to not "micro-manage the armed forces."  DiDonato v. United
States, 448 F. App'x 208, 210 (3d Cir. 2011).


IV.  Discussion

        The Court concludes that the BCNR did not act
arbitrarily and capriciously under the APA in refusing to
upgrade DiDonato's reenlistment code, and therefore the
respondents' motion for summary judgment will be granted.

        As discussed in this Court's May 2, 2012 Order, some
of DiDonato's allegations of an APA violation have already been
addressed by the submission of the certified BCNR record.[5]  On
remand, this Court ordered the BCNR to consider and explain:

_____

        [5] See Order dated May 2, 2012, ECF No. 21 (addressing
alleged fraudulent documents in BCNR record and unilateral
denial of application).

(1) what information the BCNR reviewed in 2010, and (2) what standards were used to apply the reenlistment codes.

A. Record Before the BCNR

In determining whether the BCNR's decision was arbitrary and capricious, the Court focuses its analysis on the process by which the BCNR reviewed DiDonato's application and whether the BCNR considered the relevant factors and data.

1. DD-149 Application and Attachments

First, it is not apparent that DiDonato's entire February 23, 2010 DD-149 application and its attachments were forwarded to Pfeiffer or the BCNR. The attachments, which include a March 12, 2010 letter from DiDonato's counsel, Phillip Stackhouse, to the Commandant of the Marine Corps, are not in the administrative record. Pet'r Resp. 11/30/11, Ex. 6, ECF No. 19-1, at 68-69.

Pfeiffer's April 1, 2010 letter to DiDonato initially stated that although the information submitted by DiDonato was "new," it was "not material." Cert. R. at 000026. Pfeiffer does not, however, explain why the information is not material, that is, why it would not change the Board's decision on DiDonato's reenlistment code assignment.

The Pfeiffer letter submitted to the Court following remand states that the respondents' counsel identified the March 12, 2010 letter in the administrative record as "the memorandum that Mr. Stackhouse submitted in support of the request for further consideration of the application." Pfeiffer Letter at 2.[6]

The Board, however, found that the March 12, 2010 letter, which argued that the NDRB decision must result in an upgrade to the reentry code, contained "misleading information" and therefore concluded that it was of no probative value. Id. The Board does not explain how the letter is misleading, but notes that the NDRB did not conclude that DiDonato had been discharged in error, and "the only aspect of the NDRB decision which is binding on the Board is the re-characterization of his service from 'under other than honorable conditions' to 'general under honorable conditions.'" Id.

DiDonato contends that there is nothing misleading about the attachments submitted with the 2010 application and DD-149 form. Pet'r Resp. to Resp't Supplemental Br. at 11-12, ECF No. 26. The Court recognizes that, even if the March 12, 2010 letter was not before the BCNR in 2010, the BCNR clearly

---

[6] The Board also mentions that neither DiDonato nor his counsel indexed the documents submitted in support of the request for corrective action or identified the memorandum mentioned in DiDonato's letter to the Court on May 18, 2012. Pfeiffer Letter at 2.

reviewed and weighed the DD-149 attachments on remand.  The

Board nonetheless concluded that the NDRB's decision did not

mandate that the Board must change the reentry code.  Pfeiffer

Letter at 2.  The Court does not find the Board's review of, or

its conclusions relating to, the DD-149 and its attachments to

be arbitrary and capricious.


### 2. March 31, 2010 Letter and Attachments

DiDonato also complains that Poleto reviewed the March

31, 2010 letter and attachments from his counsel but did not

forward them to the BCNR.  Pet'r Resp. 11/30/11, Ex. 6, ECF No.

19-1, at 79-81.  Moreover, Poleto's revised memorandum, in

response to Mr. Stackhouse's letter, was not reviewed by the

BCNR, as it arrived after the BCNR decision had been sent to

DiDonato.

In light of the BCNR's apparent failure to consider

the March 31, 2010 letter or the revised memorandum, the Court's

May 2, 2012 Order requested further clarification of this

process.  See Order dated May 2, 2012 at 4-5, ECF No. 21.

The Pfeiffer letter explains that such applications

are forwarded to Headquarters U.S. Marine Corps (HQMC) for

review and comment "in accordance with standard procedures of

the Board," after which the Board issues its determination of a

petitioner's application.  Pfeiffer Letter at 6.

According to the BCNR procedures, a record of BCNR proceedings "will be forwarded to the Secretary who will direct such action as he or she determines to be appropriate," including "to deny relief." Pet'r Resp. 11/30/11, ECF No. 19-1, at 43 (SECNAV Instr. 5420.193, Encl. 1 at 7(a)). The review of the application by the MMER is consistent with the delegation of authority over the BCNR to the Assistant Secretary of the Navy (Manpower and Reserve Affairs), of which the MMER is a branch. Id., ECF No. 19-1, at 29-30 (SECNAV Instr. 5420.193 ¶ 3.b). Furthermore, requests involving reenlistment codes are specifically delegated to the MMER. Id., ECF No. 19-1, at 53 (SECNAV Instr. 5420.193, Encl. 3 at 3(a)(3)).

First, the Court finds that the Board did not act arbitrarily and capriciously with regard to the March 31, 2010 letter during the 2010 review. As explained in the Pfeiffer letter, Poleto transmitted a revised memorandum to the Board on April 15, 2010, in response to comments made by Mr. Stackhouse in his March 31, 2010 letter. Pfeiffer Letter at 8 n.5; see also Cert. R. at 000032-33. Poleto responded to Mr. Stackhouse in a separate letter that those revisions were made only to correct "scrivener's errors." Cert. R. at 000034. The revised memorandum was filed without further action because "the revised opinion would not have had any bearing on the Executive Director's determination that DiDonato's request for further

consideration of his application was not supported by new material evidence." Pfeiffer Letter at 8 n.5; <u>see also</u> Cert. R. at 000031. The Court does not find the Board's action with regard to the revised memorandum arbitrary and capricious.

Furthermore, the Board considered the March 31, 2010 letter on remand as part of DiDonato's supplemental response to the motion for summary judgment. Pfeiffer Letter at 1 (citing Docket Nos. ECF No. 19, 19-1, 19-2). This letter does not appear to have altered the Board's original decision. The Board's actions with regard to the March 31, 2010 letter are therefore also not arbitrary and capricious.

### B. Standard for Assignment of Reenlistment Codes

The Court finds that the BCNR had sufficient evidence in the record to determine that DiDonato's code was correctly assigned and to determine whether the information submitted in 2010 was "not material" to amending the code.

Poleto's March 17, 2010 memorandum states that the BCNR does not change a correctly assigned reenlistment code based on subsequent events. Cert. R. at 000037. A similar memorandum from the 2004 decision says the same thing. Cert. R. at 000028-30. Poleto states that "the characterization of discharge has no direct correlation to the assignment of the reenlistment code." Cert. R. at 000037. According to the

memorandum, Poleto considered DiDonato's unauthorized absences and discharge in lieu of court-martial to conclude that the reenlistment code was correctly assigned based on DiDonato's "overall record." Id.

The Board further explains that "the only code in Appendix J which could have been assigned to Mr. DiDonato was RE-4." Pfeiffer Letter at 4 (citing MCO P1900.16E, Appendix J). First, DiDonato was not entitled to an RE-1 reentry code because he was not eligible or recommended for reenlistment. Id. at 4-5; see also Cert. R. at 000170 (reflecting on DiDonato's DD-214 form that his Commanding Officer determined that he was not recommended for reenlistment); Cert. R. at 000008-9, 000087 (letters from Colonel Applegate).

The RE-2 code was inapplicable because DiDonato was not permanently retired or transferred to the Fleet Reserve or the Temporary Disability Retired List. Id. at 5. Lastly, DiDonato was not entitled to any of the RE-3 codes because none of the specified disqualifying factors applied to him, and he is not otherwise eligible and recommended for reenlistment. Id. Based on the Court's own review of the administrative record and the MARCORPSMAN sections cited by the parties and the Board, the Court does not find the RE-4 code determination in 2010 or following remand to be arbitrary and capricious.

## C. Other Alleged Arbitrary and Capricious Conduct

DiDonato argues correctly that code upgrades are not strictly limited to correcting errors.  A decision to change an RE-code may occur when necessary to correct an error or injustice, and that decision is discretionary.  See 10 U.S.C. § 1552(a)(1).  Typically, the Board considers upgrading a reentry code only in those cases where the commanding officer had a choice between two or more authorized codes to assign the service member being separated.  Pfeiffer Letter at 6.  The Board distinguished DiDonato's case, where "the Board generally will assign a more favorable re-entry only if it has corrected the basis of the separation and determined that the code had been assigned in error or unjustly, and that it would be in the interest of justice to assign a more favorable re-entry code." Id. at 7.

DiDonato cites several administrative decisions related to other service members in support of his argument that not all Marines with his circumstances get an RE-code and that such a code is not required under his circumstances.  Although the Court understands that the RE-4 code may not be mandated, decisions related to other service members do not persuade this Court that any action by the BCNR on these points is arbitrary and capricious.

Lastly, the Court recognizes that DiDonato does not agree with the BCNR's characterization of his National Guard service.  His disagreement, however, does not influence this Court's decision with regard to whether the BCNR acted arbitrarily and capriciously in determining that the 2010 application did not contain new and material evidence.

### 1. Poleto Affidavit and NJPs

The Court agrees with DiDonato that the Poleto affidavit errs in stating that DiDonato received two NJPs. Poleto Aff. at 1-2.  In fact, DiDonato received one NJP for his UA from March 3, 2000 to April 23, 2000, and he went UA again from September 2, 2000 to November 12, 2000.  Cert. R. at 000032, 000037; see also Cert. R. at 000039-45.  The latter UA was followed by the SiLT, requested by DiDonato on December 18, 2000.  Cert. R. at 000032, 000037; see also Cert. R. at 000047-48.

This error does not, however, make the BCNR's decision arbitrary and capricious.  First, this affidavit is dated May 24, 2012, and therefore cannot have affected the 2010 BCNR decision.  Second, this inaccuracy was not reiterated in the 2013 Pfeiffer letter and is disproved by the administrative record.  The mere existence of this error does not therefore

support a conclusion that the BCNR acted arbitrarily and capriciously.

## 2. Lack of Counseling Entry in Service Record

DiDonato argues several times that his service record lacks a required "documented counseling entry" between him and his Commanding Officer upon assignment of the RE-4 reentry code. Pet'r Resp. to Resp't Supplemental Br. at 8, ECF No. 26. There is no such counseling form in his service record.

The Poleto affidavit acknowledges that the counseling entry is missing. Poleto Aff. at 1. She states that it is not uncommon for the entry to be missing, and just because the entry is missing does not mean the counseling did not take place. Id. at 1-2. Furthermore, in such cases where the entry is not included, Poleto "review[s] the petitioner's disciplinary record and if it clearly supports the assigned code, no change is made." Id. at 2. She determined that DiDonato's record did support this code. Id.

The Pfeiffer letter also directly addressed this issue. The letter notes that DiDonato conceded that Colonel Applegate issued him the RE-4 code. Pfeiffer Letter at 4 n.3; see also Pet'r Resp. 11/30/11 at 2, ECF No. 19. The Court agrees that the missing documentation is harmless because "Mr. DiDonato has presented a letter from his commanding officer

describing the reason for the assignment of the RE-4 code and Mr. DiDonato has never claimed to be prejudiced by the absence of the NAV(MC) 118(11)." Pfeiffer Letter at 4 n.3 (citing Cert. R. at 000008-9, 000087 (letters from Colonel Applegate)). Accordingly, the BCNR's actions relating to the missing entry are not arbitrary and capricious.

V.   Conclusion

Not only is the Court convinced that the BCNR did not act arbitrarily and capriciously in 2010, the BCNR's consideration on remand of a record supplemented by documents that DiDonato argued should have been included in the 2010 decision also resulted in a denial of his application to have his reentry code changed.  After reviewing the BCNR's reasoning, as set forth in the Pfeiffer letter, this Court finds no arbitrary and capricious conduct by the BCNR, and therefore the BCNR did not violate the APA by refusing to upgrade DiDonato's reenlistment code from RE-4 to RE-1.  Accordingly, the Court grants the respondents' motion for summary judgment.

An appropriate Order shall issue.